UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GARBER,

       Plaintiff,

vs.

MITCHELL DEISCH, individually and
in his official capacity as the City Manager
for Defendant CITY OF MANISTEE; DAVID
BACHMAN, individually and in his official
Capacity as Chief of Police/Director of Public
Safety for Defendant CITY OF MANISTEE,
EDWARD BRADFORD, individually and in his
official capacity as Treasurer for Defendant
CITY OF MANISTEE, JEFFREY MIKULA,
Individually and in his official capacity as
The DPW Director for Defendant City of Manistee,
PAUL R. SPANIOLA, individually and in his official
capacity as the Prosecuting Attorney for Mason County,
Michigan and Special Prosecuting Attorney for the County of
Manistee, Michigan and CITY OF MANISTEE, a
Municipal Corporation, jointly and severally,

       Defendants.

Case No. 16-cv-00455
Hon. Gordon J. Quist
United States Magistrate Judge
Phillip J. Green

_____/

| | |
|---|---|
| JAMIL AKHTAR, P.C. | PLUNKETT COONEY |
| By:   Jamil Akhtar (P38597) | By:   Gretchen L. Olsen (P36619) |
| Attorney for Plaintiff | Attorney for City Defendants |
| 7577 US Hwy. 12 | 303 Howard St. |
| Onsted, MI 49265 | Petoskey, MI 49770 |
| Ph: (517) 467-7373 | Ph: (231) 348-6424 |
| jimakhtar@att.net | golsen@plunkettcooney.com |

00369679-1

MARK QUINN (P44062)
Co-Counsel for Plaintiff
402 Maple St.
Manistee, MI 49660
Ph: (231) 723-6223
krolczkandquinn@gmail.com

CUMMINGS, McCLOREY, DAVIS
    & ACHO, P.L.C.
By: Allan C. Vander Laan (P33893)
Attys. For Deft. Spaniola
2851 Charlevoix Dr., SE, Ste. 327
Grand Rapids, MI 49546
    Ph: (616) 972-7470
    avanderlaa@cmda-law.com
                                   /

_____

**BRIEF IN SUPPORT OF MOTION BY DEFENDANT
PAUL R. SPANIOLA SEEKING DISMISSAL UNDER
FED. R. CIV. P. 12(c)**

00369679-1

## TABLE OF CONTENTS

Index of Authorities ..................................................................................................ii

Issues Presented ........................................................................................................iv

Most Controlling Authority ........................................................................................ v

Statement of Facts ..................................................................................................... 1

Standard of Review .................................................................................................... 6

Argument .................................................................................................................... 7

I.   DEFENDANT SPANIOLA HAS "ABSOLUTE IMMUNITY" AGAINST PLAINTIFF GARBER'S FEDERAL CLAIMS ................................................... 7

II.  DEFENDANT SPANIOLA HAS ABSOLUTE IMMUNITY AGAINST PLAINTIFF GARBER'S STATE CLAIMKS ..................................................... 12

Conclusion and Relief Requested .......................................................................... 14

Certificate of Service ............................................................................................... 14

## INDEX OF AUTHORITIES

### Cases

*16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F3d
502 (6th Cir. 2013)...........................................................................................................5

*Bailey v. City of Port Huron*, 507 F.3d 364 (6th Cir. 2007).....................................9, 10

*Bischoff v. Calhoun County Prosecutor*, 173 Mich. App. 802; 434 N.W.2d
249 (1988).....................................................................................................................13

*Brady v. Maryland*, 373 U.S. 83 (1963)............................................................................8

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).............................................................7, 11

*Burns v. Reed*, 500 U.S. 478 (1991) ............................................................................7, 11

*Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009) ....................................................10

*City of Detroit v. Murray Corp. of America*, 355 U.S. 489 (1958) ...................................8

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014) ......................................................5

*Davis v. Eddie*, 130 Mich. App. 284; 343 N.W.2d 11, 13-4 (1983).................................13

*Grant v. Hollenbech*, 870 F.2d 1135 (6th Cir. 1989).......................................................12

*Imbler v. Pachtman*, 424 U.S. 409 (1976)........................................................................7

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997)..........................................7, 8, 9, 11, 12

*Jones v. Bock*, 459 U.S. 199 (2007).................................................................................5

*Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010) .....................................................8

*Lomaz v. Hennosy*, 151 F.3d 493 (6th Cir. 1998)...........................................................12

*Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365; 572
N.W.2d 603 (1998) .......................................................................................................13

*Minger v. Green*, 239 F.3d 793 (6th Cir. 2001) ...............................................................8

*Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008).................................12

*Pani v. Empire Blue4 Cross Blue Shield*, 152 F.3d 67 (2nd Cir. 1998)...........................5

*Paul v. Davis*, 424 U.S. 693 (1976)......................................................................9, 10

*Riverview Health Ins. LLC v. Medical Mut. of Ohio*, 601 F.3d
404 (6th Cir. 2010)...............................................................................................5

*Rogers v. O'Donnell*, 737 F.3d 1026 (6th Cir. 2013).....................................7, 11

*Schied v. Fannie Farmers Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988) ...........5

*Spurlock v. Thompson*, 330 F.3d 344 (6th Cir. 2012) ................................11

*Vickers v. Fairfield Medical Center*, 453 F.3d 757 (6th Cir. 2006) ...........5

## Statutes

42 U.S. §1985(2).....................................................................................................3

M.C.L. 691.1407(5) ............................................................................................ 12

## Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................................5

Fed. R. Civ. P. 12(c) ....................................................................................4, 5, 14

Fed. R. Evid. 201 .................................................................................................. 1

## ISSUES PRESENTED

I.     DOES DEFENDANT SPANIOLA HAVE "ABSOLUTE IMMUNITY" AS A PROSECUTING ATTORNEY AGAINST PLAINTIFF GARBER'S FEDERAL CLAIMS?

Plaintiff Garber will answer: "No."

Defendant Spaniola answers: "Yes."


II.    DOES DEFENDANT SPANIOLA HAVE "ABSOLUTE IMMUNITY" AS A PROSECUTING ATTORNEY AGAINST PLAINTIFF GARBER'S STATE CLAIMS?

Plaintiff Garber will answer: "No."

Defendant Spaniola answers: "Yes."

## MOST CONTROLLING AUTHORITY

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)........................................................................ 7, 11

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997)........................................................ 7, 8, 9, 11, 12

*Paul v. Davis*, 424 U.S. 693 (1976) ....................................................................................... 9, 10

**STATEMENT OF FACTS**

Plaintiff John Garber alleges that the individual Defendants, including prosecutor Paul R. Spaniola, conspired to initiate and maintain an investigation and prosecution of Plaintiff Garber, with the unlawful intent to prevent Plaintiff Garber from running for election to the Manistee City Council.  This Court may take judicial notice under Fed. R. Evid. 201 that Spaniola holds office as the prosecuting attorney for Mason County, Michigan, **(See www.masoncounty.net)**.

As pleaded by Plaintiff Garber, Defendants Deisch, Bradford, Mikula and Bachman (1) had already initiated an investigation, (2) had already threatened Garber with arrest, and (3) had already issued a press release identifying Garber as target of the investigation, *before* Defendant Spaniola "*was appointed special prosecutor by the Michigan Attorney Genera*l" on October 8, 2013.  **(ECF No. 1, Pg ID 3-5, Complaint, ¶¶ 9-22)**.  With regard to events thereafter, it is pleaded by Plaintiff Garber regarding Spaniola that:

> 23.    On October 21, 2013, Detective Miller sends a complaint to **Defendant Spaniola** suggesting that Plaintiff be charged with the commission of three misdemeanors involving embezzlement of city funds.
>
> 24.    On October 29, 2013, a warrant is issued by a **Defendant Spaniola** for Plaintiff's arrest.  On November 2, 2013, just four days prior to the city election, the Defendants conspired to release to the local news media that a warrant had been issued for Plaintiff's arrest.  This same article appeared in the Monday, November 4th edition of the local newspaper, stating that Plaintiff would be arrested and arraigned on the embezzlement charge.
>
> 25.    On Tuesday, November 5, 2013, Plaintiff lost the election by sixteen votes.
>
> 26.    On February 15, 2014, **Defendant Spaniola** sent a letter to Plaintiff's counsel threatening to dismiss the misdemeanor charges and to bring criminal felony charges against Plaintiff for embezzling city funds; if Plaintiff did not accept a plea offer made by **Defendant Spaniola**.

00369679-1                                            1

27.     On or about February 15, 2014, Plaintiff refused to plead guilty to the misdemeanor embezzlement charges and **Defendant Spaniola** dismissed the misdemeanor charges.

28.     On April 3, 2014, Defendants Deisch, Bachman, Bradford and Mikula, working in concert with **Defendant Spaniola**, had three felony warrants issued by **Spaniola**, calling for the arrest of Plaintiff, on felony embezzlement charges.

29.     On or about April 9, 2014, the local news media, once again reported that Plaintiff was to be arrested on new felony charges, alleging embezzlement of city funds.

30.     On May 7, 2014, Plaintiff had to go through the excruciating embarrassment of going through a preliminary examination.

31.     On May 7, 2014, after sitting through the preliminary examination, Plaintiff was bound over to Circuit Court.

32.     In May of 2013, **Defendant Spaniola** filed in Mason County an application to be placed on the ballot for the upcoming Circuit Court Judge election.

33.     In June of 2014, Plaintiff, through his attorney Mark Quinn, filed a Motion to Quash the Preliminary Examination.

34.     On November 20, 3014, a hearing on the Plaintiff's Motion to Quash was held before the Honorable James Betzer, Manistee County Circuit Court Judge; Judge James Betzer, after hearing arguments from both sides entered an Order to Quash the Findings at the Preliminary Exam.

35.     In January of 2015, **Defendant Spaniola** sent an email to Detective Miller of the Michigan State Police advising him to destroy all the evidence as **Spaniola** would not be seeking an appeal.

**(ECF No. 1, Pg ID 5-7)**.

Plaintiff Garber's Complaint asserts three federal claims.  Count II of the Complaint alleges that the individual Defendants violated Plaintiff Garber's First Amendment Rights to run for a position on the Manistee City Council and that Defendant Spaniola "*did conspire with the other*

*Defendants in order to delay the issuance of a warrant" for that purpose."* **(ECF No. 1, Pg ID 9-10)**. Rather redundantly with regard to Defendant Spaniola, Count I of Plaintiff Garber's Complaint alleges that Spaniola and the other individual Defendants engaged in a "*conspiracy to deprive Plaintiff of his right of free expression; that being the right to run for public office*" in violation of the federal civil rights conspiracy statute, 42 U.S. §1985(2). Count III alleges that individual Defendants Deisch, Bachman, Bradford and Mikula violated Plaintiff Garber's Fourth Amendment rights by investigating and having Plaintiff Garber arrested without "probable cause." Defendant Spaniola is not mentioned by name, but it will be assumed for purposes of this motion that Plaintiff Garber intends his Fourth Amendment claim to be directed toward Spaniola as well.

Separately, Plaintiff Garber alleges claims under state law for the torts of "malicious prosecution" (Count V), "abuse of process" (Count VI), and "intentional infliction of emotional distress" (Count VII). It is further asserted that the individual Defendants engaged in a "*civil conspiracy*" for the purpose of committing these torts (Count IV).

It is the position of Defendant Spaniola that none of the conduct alleged on his part by Plaintiff Garber would fall outside the scope of Spaniola's "absolute immunity" as a prosecuting attorney under both federal and Michigan law. Therefore, Defendant Spaniola is entitled to dismissal of Plaintiff Garber's claims against him by judgment on the pleadings under Fed. R. Civ. P. 12(c).

## STANDARD OF REVIEW

A motion seeking dismissal under Fed. R. Civ. P. 12(c) is reviewed under the same standard as a motion under Fed. R. Civ. P. 12(b)(6). *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 761 (6th Cir. 2006). Therefore, a motion under Rule 12(c) "tests whether a cognizable claim has been pleaded in the complaint." *Schied v. Fannie Farmers Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The motion "will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Ins. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). "Immunity" is included among these affirmative defenses. *Jones v. Bock*, 459 U.S. 199, 215 (2007) citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2nd Cir. 1998).

The reviewing court must generally accept all *factual* allegations in the complaint as "true," but the Court need not accept as true "legal conclusions or unwarranted factual inferences." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice" to state a claim. *Id*.

The reviewing court should remain cognizant that "[d]iscovery imposes costs - - not only on defendants but also on courts and society." *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). A case should be dismissed, without discovery, "when there is no reasonable likelihood that [the plaintiff] can construct a claim from the events related in the complaint." *Id*.

<u>ARGUMENT</u>

I.    **DEFENDANT SPANIOLA HAS "ABSOLUTE IMMUNITY" AGAINST PLAINTIFF GARBER'S FEDERAL CLAIMS.**

The Supreme Court has established that prosecutors have "the same absolute immunity under §1983 that the prosecutor enjoys common law." ***Imbler v. Pachtman***, 424 U.S. 409, 427 (1976).  In that context, the Court has recognized that "common law prosecutors were immune from suits for malicious prosecution and for defamation, and this immunity extended to the knowing use of false testimony before the grand jury and trial." ***Burns v. Reed***, 500 U.S. 478, 485 (1991).

The "functional approach" recognized in ***Imbler*** "held that a state prosecutor had absolute immunity for the initiation and pursuit of a criminal prosecution." ***Buckley v. Fitzsimmons***, 509 U.S. 259, 269 (1993).  "A prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer falls squarely within the aegis of absolute prosecutorial immunity." ***Ireland v. Tunis***, 113 F.3d 1435, 1446 (6th Cir. 1997).

The Sixth Circuit has particularly recognized that this absolute immunity extends to "investigative acts undertaken in direct preparation of judicial proceedings." ***Rogers v. O'Donnell***, 737 F.3d 1026, 1032 (6th Cir. 2013) *quoting* ***Ireland***.  This includes the prosecutor's interactions with police investigators and statements made by the prosecutor in an affidavit supporting an application for an arrest warrant. ***Koubriti v. Convertino***, 593 F.3d 459, 467 (6th Cir. 2010).  Even suppression of exculpatory evidence in violation of the mandate of ***Brady v. Maryland***, 373 U.S. 83 (1963) is encompassed by absolute immunity. ***Koubriti***, 593 F.3d at 470.

Plaintiff Garber asserts three federal claims against Defendant Spaniola, which in substance are: (1) violation of Garber's First Amendment rights to run for office, (2) conspiracy

00369679-1                                    5

to violate Garber's First Amendment rights to run for office and (3) prosecution without probable cause in violation of the Fourth Amendment.  Whatever the label a plaintiff chooses to apply to his claims, it is the underlying allegations of fact that determine the nature of the claims and the applicability of federal (or state) immunity.  *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001); see also *City of Detroit v. Murray Corp. of America*, 355 U.S. 489, 492-3 (1958).  None of the allegations asserted by Plaintiff Garber's complaint against Defendant Spaniola identify any conduct that would fall outside Defendant Spaniola's absolute immunity as a prosecuting attorney.

At paragraph 23 of his Complaint, Plaintiff Garber alleges that "*Detective Miller [sent] a complaint to Defendant Spaniola suggesting that Plaintiff be charged with the commission of three misdemeanors involving embezzlement of city funds*."  The act of receiving information from a detective is a normal first step for a prosecutor to initiate a criminal prosecution, and such act certainly falls within prosecutor Spaniola's absolute immunity.  *Ireland,* *supra*.  Moreover, the act of merely receiving materials from a law enforcement officer is completely lawful and unremarkable.

At paragraph 24, Plaintiff Garber alleges simply that Spaniola had a warrant issued for Garber's arrest.  This falls fully within the absolute immunity recognized by the Sixth Circuit in *Ireland*, *supra*, covering "[a] prosecutor's decision to file a criminal complaint and seek an arrest warrant."  *Id.*, at 1446.  Defendant Spaniola is entitled to absolute immunity for the alleged actions.

The further allegations of paragraph 24 that "*the Defendants conspired to release to the local news media that a warrant had been issued for Plaintiff's arrest*," resulting in a newspaper article, simply fails to state a cognizable claim at all.  Plaintiff Garber's own allegation acknowledges that a warrant for Garber's arrest "had been issued."  There is nothing unlawful in public officials releasing accurate statements of official action to the news media.  In *Paul v. Davis*,

6

424 U.S. 693 (1976), the Supreme Court expressly rejected a plaintiff's claim that publication of the fact of his arrest (*on a charge to which the plaintiff pleaded not guilty and which was not subsequently pursued by the State*) raised a constitutional claim under either the First, Fourth, Fifth, Ninth or Fourteenth Amendments. ***Paul***, 424 U.S. at 712-3. The Sixth Circuit has recognized and enforced this rule. ***Bailey v. City of Port Huron,*** 507 F.3d 364, 367-8 (6th Cir. 2007) (*release of information regarding the arrest of the plaintiff on drunk driving charges does not state a claim*).

At paragraph 26, it is alleged that Defendant Spaniola threatened to upgrade the charges against Plaintiff Garber from misdemeanor to felony, while seeking to pressure Garber to accept a plea deal. The Sixth Circuit recognizes that "[c]onduct associated with plea bargains has long been held by this Court to be intimately associated with the prosecutors' role as an advocate of the State in the judicial process as to warrant absolute immunity." ***Cady v. Arenac County***, 574 F.3d 334, 341 (6th Cir. 2009). The allegations of paragraphs 27 and 28 that Spaniola followed through upon his alleged threat to upgrade the charges is part of the same process to which this same absolute immunity must necessarily apply.

The allegation of paragraph 29 that "*local news media, once again reported that plaintiff was to be arrested on new felony charges*" says nothing directly about Defendant Spaniola being involved in any contact with or release to the media. Moreover, any press release regarding this accurate, public information again falls within the scope of conduct that the Supreme Court and Sixth Circuit have declared does not violate the Constitution. ***Paul***, *supra*, ***Bailey***, *supra*.

Whatever the unspecified involvement of Defendant Spaniola in the preliminary examination proceedings identified by Plaintiff Garber in paragraphs 30 and 31 of his Complaint, such conduct unquestionably falls within the scope of Defendant Spaniola's absolute immunity. A prosecutor's actions to initiate and pursue a criminal prosecution, including the "presentation of

. . . materials to a judicial officer, falls[] squarely within the aegis of absolute prosecutorial immunity." *Ireland*, 113 F.3d at 1446, *Buckley*, 509 U.S. at 269.

Paragraph 32 alleges that Defendant Spaniola filed to become a candidate for judge in Mason County (notably not Manistee County, where prosecution of Plaintiff Garber was occurring). Although not a prosecutorial act entitled to immunity, no immunity is needed for such act. The filing of the judicial candidacy by Spaniola is his right, and in no way offends any right of Garber.

Finally, the allegation that "*Defendant Spaniola sent an email to Detective Miller of the Michigan State Police advising him to destroy all the evidence as Spaniola would not be seeking appeal*" is fatally vague. It begs the question *what* "evidence" is being referenced. Even assuming, however, that Plaintiff Garber means to imply destruction of evidence that would have shown the prosecution of Garber to be unfounded, the Supreme Court and Sixth Circuit have held that a prosecutor's suppression of exculpatory evidence is protected by the prosecutor's absolute immunity. *Burns*, 500 U.S. at 485, *Rogers*, 373 F.3d at 1031, *Spurlock v. Thompson*, 330 F.3d 344, 797-8 (6th Cir. 2012).

Allegations of wrongful intent on the part of Spaniola, even if they could be proven true, do nothing to remove any of these actions from the protection of absolute immunity. Motivation is irrelevant. The fact that a plaintiff "ascribes impure and malicious motives to the prosecutors is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutor's actions." *Ireland*, 113 F.3d at 1447. So long as the prosecutor is functioning in his role of seeking and pursuing criminal charges, the prosecutor retains absolute immunity, even if acting in a malicious conspiracy with others to harm the target of the prosecution. *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (*alleged conspiracy to*

*bring false charges of child abuse*), ***Lomaz v. Hennosy***, 151 F.3d 493, 498-9 (6th Cir. 1998) at n.7 (*alleged conspiracy to bring false charges to "run [plaintiff] out of business"*).

In short, nothing alleged by Plaintiff Garber against Defendant Spaniola, even if true, avoids Defendant Spaniola's absolute immunity.  Garber's claims against Spaniola should be dismissed.

### II.    DEFENDANT SPANIOLA HAS ABSOLUTE IMMUNITY AGAINST PLAINTIFF GARBER'S STATE CLAIMS.

When confronted by a claim asserted against an individual government official under Michigan law, the first step is always to determine whether the individual official is entitled to "absolute immunity" under M.C.L 691.1407(5).  ***Odom v. Wayne County***, 482 Mich. 459, 479, 760 N.W.2d 217, 228 (2008).  Defendant Spaniola has such immunity.

By mandate of M.C.L 691.1407(5), "*the elective or highest appointed executive official[s] of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her . . . executive authority*." The Michigan courts have confirmed that this immunity applies to a prosecuting attorney.  ***Bischoff v. Calhoun County Prosecutor***, 173 Mich. App. 802, 806; 434 N.W.2d 249, 251 (1988).

Even more broadly and apart from this statute, the Michigan Supreme Court has declared that "*[a] public prosecutor is not liable for malicious prosecution*." ***Matthews v. Blue Cross and Blue Shield of Michigan***, 456 Mich. 365, 379; 572 N.W.2d 603, 610 (1998).  In this latter regard, the Michigan Supreme Court has acknowledged, with approval, the United States Supreme Court holdings regarding the "absolute immunity" of prosecutors.  ***Id.***, at n.16.  The Court of Appeals has specifically held the principle of the federal "absolute immunity" for a prosecutor to apply

00369679-1                                              9

against state claims as well.  ***Davis v. Eddie***, 130 Mich. App. 284, 287-9; 343 N.W.2d 11, 13-4 (1983).

Under these principles, Plaintiff Garber's state-law claims against Defendant Spaniola fail for the same reason as his federal-law claims fail.  The substantive factual allegations underlaying both Garber's federal and state claims are the same.  All of the alleged unlawful acts by Defendant Spaniola fall within the scope of Spaniola's activities as a prosecuting attorney, as described above.  As a consequence, all of Plaintiff Garber's claims should be dismissed.

00369679-1

10

## CONCLUSION AND RELIEF REQUESTED

The allegations of Plaintiff Garber's Complaint fail to allege any act by prosecutor Spaniola

falling outside the broad scope of a prosecutor's absolute immunity for actions taken in connection

with the initiation and pursuit of criminal charges.  Even if all the allegations were proven true,

Spaniola would not be liable to Garber.  Therefore, Spaniola is entitled to entry of an order under

Fed. R. Civ. P. 12(c) dismissing the claims asserted by Plaintiff Garber against him.

> s/Allan C. Vander Laan_____
> Allan C. Vander Laan
> Cummings, McClorey, Davis & Acho, P.L.C.
> Attorneys for Deft. Spaniola
> 2851 Charlevoix Dr., SE, Ste. 327
> Grand Rapids, MI 49546
> Ph: (616) 972-7470
> avanderlaan@cmda-law.com
> P-33893

Dated: September 12, 2016

### CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016, I electronically filed Defendant Spaniola's Motion Seeking Dismissal Under Fed. R. Civ. P. 12(c) and Brief in Support of Motion with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Jamil Akhtar (P38597)                          Gretchen L. Olsen (P36619)
Mark Quinn (P44062)

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: (none).

> /s/ Allan C. Vander Laan
> Allan C. Vander Laan