UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GARBER,

      Plaintiff,

vs.

MITCHELL DEISCH, individually and
In his official capacity as the City Manager
For Defendant CITY OF MANISTEE; DAVID
BACHMAN, individually and in his official
capacity as Chief of Police/Director of Public
Safety for Defendant CITY OF MANISTEE,
EDWARD BRADFORD, individually and in his
official capacity as Treasurer for Defendant
CITY OF MANISTEE, JEFFREY MIKULA,
individually and in his official capacity as
the DPW Director for Defendant City of Manistee,
PAUL R. SPANIOLA, individually and in his official
capacity as the Prosecuting Attorney for Mason County,
Michigan and Special Prosecuting Attorney for the County of
Manistee, Michigan and CITY OF MANISTEE, a
Municipal Corporation, jointly and severally,

Case No. 16-cv-00455
Hon. Gordon J. Quist
United States Magistrate Judge
Phillip J. Green

_____/

JAMIL AKHTAR, P.C.
By:   Jamil Akhtar (P38597)
Attorney for Plaintiff
7577 US Hwy. 12
Onsted, MI 49265
Ph: (517) 467-7373
jimakhtar@att.net

PLUNKETT COONEY
By:   Gretchen L. Olsen (P36619)
Attorney for City Defendants
303 Howard St.
Petoskey, MI 49770
Ph: (231) 348-6424
golsen@plunkettcooney.com

MARK QUINN (P44062)
Co-Counsel for Plaintiff
402 Maple St.
Manistee, MI 49660
Ph: (231) 723-6223
krolczkandquinn@gmail.com

CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
By:    Allan C. Vander Laan (P33893)
Attorneys for Deft. Spaniola
2815 Charlevoix Dr., SE, Ste. 327
Grand Rapids, MI 49546
Ph: (616) 975-7470
avanderlaan@cmda-law.com

_____/

## <u>DEFENDANT SPANIOLA'S BRIEF IN SUPPORT OF RESPONSE OPPOSING "PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT" (ECF NO.35)</u>


## <u>ORAL ARGUMENT REQUESTED</u>

# <u>TABLE OF CONTENTS</u>

Index of Authorities .................................................................................. ii

Issue Presented ...................................................................................... iv

Most Controlling Authority ..................................................................... v

Statement of Facts .................................................................................... 1

Standard of Review ................................................................................ 10

Argument ................................................................................................. 11

I. A PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT SHOULD BE DENIED, WHEN THE PROPOSED AMENDMENT WOULD BE "FUTILE" ............................................................................................ 11

II. PLAINTIFF GARBER'S PROPOSED "FIRST AMENDED COMPLAINT" SHOULD BE DENIED AS "FUTILE," BECAUSE IT DOES NOT ALLEGE FACTS THAT COULD DEFEAT DEFENDANT SPANIOLA'S ABSOLUTE IMMUNITY AS A PROSECUTING ATTORNEY ............................................................................................ 11

Conclusion and Relief Requested .......................................................... 21

Certificate of Service .............................................................................. 21

# INDEX OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................15

*Bailey v. City of Port Huron*, 507 F.3d 364 (6th Cir. 2007)............................15, 17

*Bischoff v. Calhoun County Prosecutor*, 173 Mich. App. 802, 434 N.W.2d 249 (1988) ....................................................................................................................19

*Brady v. Maryland*, 373 U.S. 83 (1963)...................................................................12

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) .......................................................12

*Burns v. Reed*, 500 U.S. 478 (1991) ........................................................................12

*Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009) ...........................................17

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000) ...................................................12

*Courie v. Alcoa Wheel & Forge Products*, 577 F.3d 625 (6th Cir. 2009) ............11

*Crawford v. Roane*, 53 F.3d 750 (6th Cir. 1995) ...................................................10

*Davis v. Eddie*, 103 Mich. App. 284, 343 N.W.2d 11 (1983) ...............................20

*Foman v. Davis*, 371 U.S. 178 (1962).....................................................................10

*Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir. 1989) ............................................14

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ..............................................................12

*In re Oliver*, 333 U.S. 257 (1948) ..........................................................................16

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997)................................. 12, 14, 16, 17

*Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010) .............................12, 13, 18

*Lomaz v. Hennosy*, 151 F.3d 493 (6th Cir. 1998)..................................................14

*Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365, 572 N.W.2d 603 (1998) ....................................................................................................19

*Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005).......................................11

*Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008) ......................19

*Paul v. Davis*, 424 U.S. 693 (1976)..............................................................15, 17

*Payton v. Wayne County*, 137 Mich. App. 361, 357 N.W.2 700 (1984).............20

*Rogers v. O'Donnell*, 737 F.3d 1026 (6th Cir. 2013) ...........................................13

*SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351 (6th Cir. 2014) ........11

*Tucker v. Middleburg-Legacy Place*, 359 F.3d 545 (6th Cir. 2008) ....................11

## Statutes

M.C.L. 691.1407(5) ...............................................................................................19

## Rules

Fed. R. Civ. P. 12(c)......................................................................................1, 9, 21

Fed. R. Civ. P. 15(a)..............................................................................................11

## ISSUE PRESENTED

I.   SHOULD PLAINTIFF GARBER'S MOTION SEEKING LEAVE TO FILE HIS PROPOSED "FIRST AMENDED COMPLAINT" BE DENIED AS "FUTILE," BECAUSE IT PLEADS NO FACTS THAT COULD DEFEAT DEFENDANT SPANIOLA'S ABSOLUTE IMMUNITY AS A PROSECUTOR?

Plaintiff Garber answers: "No."

Defendant Spaniola answers: "Yes."

## MOST CONTROLLING AUTHORITY

*Bishoff v. Calhoun County*, 173 Mich. App. 802, 434 N.W.2d 249 (1988) ........19

*Davis v. Eddie*, 130 Mich. App. 284, 343 N.W.2d 11 (1983) ..............................20

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997) ................................. 12, 14, 16, 17

*Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010) ..............................12, 13, 18

*Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005) .....................................11

*Payton v. Wayne County*, 137 Mich. App. 361, 357 NW2d 700 (1984) ..............20

*Tucker v. Middleburg-Legacy Place*, 359 F.3d 545 (6th Cir. 2008) ....................11

## STATEMENT OF FACTS

### Introduction.

As in his original Complaint, Plaintiff John Garber's "Proposed First Amended Complaint" generally alleges that the individual Defendants, including special prosecutor Paul R. Spaniola, conspired to initiate and maintain a criminal investigation and prosecution of Plaintiff Garber, with the unlawful intent to prevent Plaintiff Garber from running for election to the Manistee City Council.  Confronted by Defendant Spaniola's pending motion seeking dismissal under Fed. R. Civ. P. 12(c) on the basis of absolute immunity, Plaintiff Garber seeks leave to amend his Complaint.

It is the position of Defendant Spaniola that the proposed "First Amended Complaint," like the original Complaint, still fails to plead any facts that could defeat Defendant Spaniola's immunity.  In fact, the proposed amendments make such insignificant changes to the original Complaint, the argument to be presented here is little different from the argument in Defendant Spaniola's motion seeking dismissal.

### Facts.

Like the original Complaint, the proposed Amended Complaint pleads that Defendants Deisch, Bradford, Mikula and Bachman (1) had already initiated an investigation, (2) had already threatened Garber with arrest, and (3) had already issued a press release identifying Garber as target of the investigation, *before*

Defendant Spaniola "*was appointed special prosecutor by the Michigan Attorney General*" on October 8, 2013.  **(ECF No. 35, Pg ID 266-7, Proposed Amended Complaint, ¶¶ 15-22)**.  With regard to events thereafter, it is now pleaded by Plaintiff Garber regarding Spaniola that:

> 22.     On or about October 8, 2013, Defendant Spaniola was appointed Special Prosecutor by the Michigan Attorney General.  On 10-10-13, Defendants, Deisch and Bachman met with **Defendant-Spaniola** and requested that **Spaniola** delay requesting the arrest warrant for Plaintiff, until the weekend before the upcoming November 5, 2013 election for City Council.  On October 11, 2013, **Defendant Spaniola**, in order to delay requesting the arrest warrant, asked Det. Sgt. Miller to interview DPW employees, Bifoss, Picardat and Oleinczak. (Exhibit 1)

> 23.     On October 21, 2013, Detective Miller sent a complaint to **Defendant Spaniola** suggesting that Plaintiff be charged with the commission of three misdemeanors involving embezzlement of city funds.  **Defendant Spaniola** held onto the warrant request for (8) days and requested the warrant for Plaintiff's arrest on October 2, 2013; this would allow the Defendants Deisch and Bachman to release the information to the local news media on the weekend before the Tuesday, November 5, 2013 election for City Council. (Exhibit 2).

> 24.     On October 29, 2013, a warrant is requested by **Defendant Spaniola** for Plaintiff's arrest.  As part of **Spaniola** investigation, he did, on November 2, 2013, just four days prior to the city election, **Spaniola**, Bachman and Deisch conspired to release to the local news media that a warrant had been issued for Plaintiff's arrest.  This same article appeared in the Monday, November 4th edition of the local newspaper, stating that Plaintiff would be arrested and arraigned on the embezzlement charge.

The weekend and Monday edition of the Manistee News Advocate newspaper carried an article quoting **Spaniola** as saying:

"According to Special Prosecutor **Paul Spaniola** of the Mason County Prosecutor's Office, the investigation conducted by the Michigan State Police allege that Garber sold Manistee County property, specifically scrap metal and did not turn over the proceeds of the sales to the City Treasurer." (Exhibit 3)

**Spaniola**, in his conspiratorial support of Defendant Deisch, Bachman, Mikula and Bradford, knowingly and with malice gave the newspapers false information in order to persuade the public not to vote for Plaintiff in the upcoming November 5th City Election. (Exhibit 3)

25. On Tuesday, November 5, 2013, Plaintiff lost the election by sixteen votes.

26. On February 15, 2014, **Defendant Spaniola** sent a letter to Plaintiff's counsel threatening to dismiss the misdemeanor charges and to bring criminal felony charges against Plaintiff for embezzling city funds; if Plaintiff did not accept a plea offer made by **Defendant Spaniola**.

27. On and after February 15, 2014, Plaintiff refused to plead guilty to the misdemeanor embezzlement charges and **defendant Spaniola** dismissed the misdemeanor charges.

28. On April 3, 2014, Defendants Deisch, Bachman, Bradford and Mikula, working in concert with **Defendant Spaniola**, had three felony warrants issued by **Spaniola**, calling for the arrest of Plaintiff, on felony embezzlement charges.

3

29.     On or about April 9, 2014, the local news media, once again reported that Plaintiff was to be arrested on new felony charges, alleging embezzlement of city funds.

30.     On May 7, 2014, Plaintiff had to go through the excruciating embarrassment of going through a preliminary examination.

31.     On May 7, 2014, after sitting through the preliminary examination, Plaintiff was bound over to Circuit Court.

32.     In May of 2013, **Defendant Spaniola** filed in Mason County an application to be placed on the ballot for the upcoming Circuit Court Judge election.

33.     In June of 2014, Plaintiff, through his attorney Mark Quinn, filed a Motion to Quash the Preliminary Examination.

34.     On November 20, 2014, a hearing on the Plaintiff's Motion to Quash was held before the Honorable James Betzer, Manistee County Circuit Court Judge; Judge James Betzer, after hearing arguments from both sides entered an Order to Quash the Findings at the Preliminary Exam.

35.     In January of 2015, **Defendant Spaniola** sent an email to Detective Miller of the Michigan State Police advising him to destroy all the evidence as **Spaniola** would not be seeking an appeal.
**(ECF No. 35, Pg ID 268-70)**.

At various points throughout the proposed Amended Complaint, Plaintiff

Garber makes the conclusory allegation that Defendant Spaniola was acting in an

"*investigativ*e" or "*administrative*" capacity.  **(ECF No. 35, Pg Id 268, 273, 275-6,**

**279-80, ¶¶ 24, 49-50, 58, 62, 63, 69)**.  No actual "administrative" act is identified.

Moreover, there is no allegation of even remotely suggesting that Defendant Spaniola actually performed any "investigation." Rather, it is alleged that Spaniola "*asked Det. Sgt. Miller [of the Michigan State Police] to interview*" certain witnesses and "*ordered Miller to conduct needless additional questioning of (3) witnesses*." **(ECF No. 35, Pg ID 267, 273, ¶¶ 22 and 49, underlines added)**. The documents Plaintiff Garber appends to his proposed Amended Complaint as "Exhibit 2" include a "Supplemental Incident Report" that reiterates "*Prosecutor Spaniola has asked that these men be interviewed*." **(ECF No. 35-2, Pg ID 290, underline added)**. It was the Michigan State Police, not Spaniola, who performed the "investigation."

Moreover, Plaintiff Garber again acknowledges that the investigation had been requested and reported to the news media by Defendants Deisch, Bradford and Mikula in March of 2013, *six months before* the appointment of Defendant Spaniola as special prosecutor in October 2013. **(ECF No. 35, Pg ID 266-7, ¶¶ 15, 19, 22)**. Again, once appointed, Defendant Spaniola only "*asked*" Sgt. Miller to perform additional interviews. **(ECF No. 35, Pg ID 267, 273, ¶¶ 22 and 49)**.

Plaintiff Garber's proposed Amended Complaint, like his original Complaint, asserts three federal claims. Count II of the Complaint alleges that the individual Defendants violated Plaintiff Garber's First Amendment rights to run for a position on the Manistee City Council, alleging that Defendant Spaniola conspired with Defendants Deisch and Bachman to "*delay*" the issuance of the warrant for Plaintiff

Garber's arrest until the eve of the Manistee City Council election.  **(ECF No. 35, Pg ID 272-3, particularly ¶ 47)**.  Redundantly, it is alleged in Count I that Spaniola and the other Defendants engaged in a "*conspiracy to deprive Plaintiff of his right to free expression; that being the right to run for public office*" by "*ask[ing] Defective Miller to conduct additional investigations in order to delay the issuance of the warrant, to coincide with the City election, in which Plaintiff was running for a city council position*."  **(ECF No. 35, Pg ID 270-1)**.  Then in Count III, the proposed Amended Complaint alleges that the Defendants "*did cause Plaintiff to be arrested for a misdemeanor embezzlement charge, for personal and malicious reasons without adequate proof or facts to support the charge*" and that:

> 58. . . . **Spaniola**, Deisch, and Bachman, in May of 2014, when these (3) conspirators through the actions of **Defendant Spaniola**, in performing his administrative duties, threatened Plaintiff with a dismissal of the misdemeanor charges brought against him in October 2013, with the issuance of felony charges, using the same evidence, would take place if Plaintiff refused to plead guilty to the misdemeanor charges.  As of May of 2014, **Defendant Spaniola**, as part of his performance of his administrative and investigative duties, knew that he would not be able to prove the elements of the misdemeanor charges; this threat was made just prior to **Spaniola** seeking election in the August 2014 primary for Circuit Court Judge and would be reported I the local news media as a Prosecutor who could not even convict a person on misdemeanor charges.
> **(ECF No. 35, Pg ID 275-6)**.

6

Separately, Plaintiff Garber alleges four tort claims under state law.  In a claim

asserting "*malicious prosecution*" (Count V), Plaintiff Garber now alleges that:

> 68.   Defendants, Deisch, Bachman and **Spaniola**,
> instituted and initiated the allegations of criminal activity
> against Plaintiff without probable cause and with malice.
> **Defendant Spaniola** was not acting within his
> prosecutorial powers when he conspired with defendants
> Bachman and Deisch; **Spaniola** was performing
> investigative and administrative function of his office
> when he conspired with Defendants Bachman and Deisch
> in requesting the arrest warrant.
>
> 69.   Upon information and belief, Defendants,
> **Spaniola**, Deisch and Bachman, instituted the
> investigation for personal reasons, which include but are
> not limited to the following:
>
> A.   Vexation
> B.   Damage to Plaintiff's professional reputation
> C.   Damage to Plaintiff's community reputation
> D.   Retaliation for Plaintiff's efforts to run for a
>       position on the City Council.
> **(ECF No. 35, Pg ID 279-80)**.

Under the label "*abuse of process*" (Count VI), *Plaintiff Garber alleges that the*

*Defendants "abused the criminal investigatory process by using it for their ulterior*

*motives or purpose to cause vexation, trouble, embarrassment, [and] damage to*

*Plaintiff Garber's professional and community reputation*" and that:

> 77.   The allegations and misuse of the criminal
> investigatory process was improper since Defendants
> **Spaniola**, Deisch and Bachman knew, or should have
> known that the allegations regarding Plaintiff's actions
> were false.
> **(ECF No.  35, Pg ID 282-3)**.

Speaking of the "Defendants" collectively and without specification, Plaintiff Garber asserts a claim for "*Intentional Infliction of Emotional Distress*" (Count VII), reciting that:

> 80.    The actions taken by the Defendants constitute extreme and outrageous conduct which is not sanctioned or otherwise condoned by society.
>
> 81.    The actions of the Defendants were done with full intent and/or recklessness knowing that the consequences of their actions would cause Plaintiff to suffer extreme economic hardship and extreme anxiety and emotional distress.
>
> 82.    The actions taken by the Defendants as set forth above and concurred in by Defendant, City of Manistee, was cause for Plaintiff suffering extreme emotional distress, fear of being arrested by the Michigan State Police and the loss of his ability to make a living. **(ECF No. 35, Pg ID 284)**.

Finally, under the title "*Civil Conspiracy*" (Count IV), it alleged that:

> 62.    The individual Defendants, collectively and illegally, maliciously and unlawfully conspired with one another with the intent to and for the illegal purpose of having Plaintiff falsely arrested and preventing Plaintiff from being elected to a public office; in so doing **Defendant Spaniola** had control over the administrative and investigative process and used this control to assist in the conspiracy as herein set out. **(ECF No. 35, Pg ID 277-8)**.

It is the position of Defendant Spaniola that Plaintiff Garber's proposed amendments to his Complaint still fail to allege any conduct on Spaniola's part that

would fall outside the scope of Spaniola's "absolute immunity" as a prosecuting attorney under both federal and Michigan law.   Therefore, Plaintiff Garber's proposed amendment is "futile," and Spaniola remains entitled to dismissal of Plaintiff Garber's claims against him by judgment on the pleadings under Fed. R. Civ. P. 12(c) as described in Spaniola's pending motion and brief seeking such dismissal.

## STANDARD OF REVIEW

"[T]he grant or denial of an opportunity to amend is within the discretion of the district court." ***Foman v. Davis***, 371 U.S. 178, 182 (1962), accord ***Crawford v. Roane***, 53 F.3d 750, 753 (6th Cir. 1995).

## **ARGUMENT**

**I.  A PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT SHOULD BE DENIED, WHEN THE PROPOSED AMENDMENT WOULD BE "FUTILE."**

Leave to amend pleadings under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires."   Nevertheless, "the right to amend is not absolute or automatic." ***Tucker v. Middleburg-Legacy Place***, 359 F.3d 545, 551 (6th Cir. 2008). In particular, leave to amend should not be granted where the proposed amendment would be "futile" - - i.e., "when the proposed amendment would not permit the complaint to survive a motion to dismiss."   ***Miller v. Calhoun County***, 408 F.3d 803, 817 (6th Cir. 2005), ***Courie v. Alcoa Wheel & Forge Products***, 577 F.3d 625, 633 (6th Cir. 2009), ***SFS Check, LLC v. First Bank of Delaware***, 774 F.3d 351, 355 (6th Cir. 2014).

**II.  PLAINTIFF GARBER'S PROPOSED "FIRST AMENDED COMPLAINT" SHOULD BE DENIED AS "FUTILE," BECAUSE IT DOES NOT ALLEGE FACTS THAT COULD DEFEAT DEFENDANT SPANIOLA'S ABSOLUTE IMMUNITY AS A PROSECUTING ATTORNEY.**

**A.  Defendant Spaniola has "absolute immunity" against Plaintiff Garber's federal claims as pleaded by Plaintiff Garber's proposed "First Amended Complaint."**

The Supreme Court has established that prosecutors have absolute immunity from suits for malicious prosecution, for defamation, and even for the knowing use of false testimony against a defendant in criminal proceedings. ***Imbler v. Pachtman***, 424 U.S. 409, 427 (1976), ***Burns v. Reed***, 500 U.S. 478, 485 (1991). Even suppression of exculpatory evidence in violation of the mandate of ***Brady v. Maryland***, 373 U.S. 83 (1963) is encompassed by absolute immunity. ***Koubriti v. Convertino***, 593 F.3d 459, 470 (6th Cir. 2010).

The Court has adopted a "functional approach" that recognizes a state prosecutor to have "absolute immunity for the initiation and pursuit of a criminal prosecution." ***Buckley v. Fitzsimmons***, 509 U.S. 259, 269 (1993). "A prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity." ***Ireland v. Tunis***, 113 F.3d 1435, 1446 (6th Cir. 1997).

"By contrast, a prosecutor who *perform*s the investigative functions normally performed by a detective or police officer such as searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested is entitled only at most qualified immunity." ***Cooper v. Parrish***, 203 F.3d 937, 947 (6th Cir. 2000) *emphasis added*. Manifestly, Plaintiff Garber seeks to avail himself of this distinction by making repeated conclusory assertions that Spaniola's actions occurred during the performance of "investigative" and "administrative"

duties.  **(ECF No. 35, Pg ID 268, 273, 275-6, 277-8, 279-80, Proposed Amended Complaint, ¶¶ 24, 49, 50, 58, 62, 68, 69)**.  Yet the facts alleged (and the exhibits attached) in the proposed Amended Complaint do not describe that Defendant Spaniola actually *performed* any "investigative" or "administrative" acts.  Rather, after appointment - - at a time after other Defendants had allegedly already initiated and publicized an investigation - - Spaniola "*asked*" the *Michigan State Police* to perform more investigation.  **(ECF No. 35, Pg ID 267, 273, ¶¶ 22 and 49)**.

Moreover, the Sixth Circuit has particularly recognized that absolute immunity extends to "investigative acts undertaken in direct preparation of judicial proceedings."  ***Rogers v. O'Donnell***, 737 F.3d 1026, 1032 (6th Cir. 2013).  This includes the prosecutor's interactions with police investigators and statements made by the prosecutor in an affidavit supporting an application for an arrest warrant.  ***Koubriti v. Convertino***, 593 F. 3d 459, 467 (6th Cir. 2010).

Under the "functional" analysis mandated by the Supreme Court, all of the alleged actions by Defendant Spaniola remain within the scope of Spaniola's absolute immunity as a prosecutor.  The various allegations can be taken in turn.

The only arguably new emphasis of Plaintiff Garber's amended allegations is that Spaniola acted to "*delay*" the requesting of the warrant for Plaintiff Garber's arrest until the eve of the City Council election.  **(ECF No. 35, Pg ID 267-8, 272-3, Proposed Amended Complaint, ¶¶ 22-3)**.  Yet a prosecutor's "decision to file a

criminal complaint and seek an arrest warrant . . .fall[s] squarely within the aegis of absolute prosecutorial immunity." *Ireland*, 113 F.3d at 1446.

That decision and action are not "administrative" or "investigative," as Plaintiff Garber labels them. **(ECF No. 3g, Pg ID 273, ¶¶ 49-50)**. Moreover, the fact that a plaintiff "ascribes impure and malicious motives to the prosecutors is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutor's actions." *Ireland*, 113 F.3d at 1447. So long as the prosecutor is functioning in his role of seeking and pursuing criminal charges, the prosecutor retains absolute immunity, even if acting in a malicious conspiracy with others to harm the target of the prosecution. *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (*alleged conspiracy to bring false charges of child abuse*), *Lomaz v. Hennosy*, 151 F.3d 493, 498-9 (6th Cir. 1998) at n.7 (*alleged conspiracy to bring false charges to "run [plaintiff] out of business"*).

In initiating prosecution, seeking the warrant and pursuing the charges (in whatever timeframe he chose), Defendant Spaniola was acting within the "function" of a prosecutor. He retains immunity for such actions, regardless of allegedly wrongful motivations for the timing of the act.

The allegations of paragraph 24 **(ECF No. 35, Pg ID 268)** that Spaniola conspired with the other Defendants to release news of the warrant to the media fails to state a cognizable claim at all. Plaintiff Garber's allegations in paragraphs 22 and

23 acknowledge that a warrant *had* been issued.  There is nothing unlawful in public officials releasing accurate statements of official action to the news media.  In ***Paul v. Davis***, 424 U.S. 693 (1976), the Supreme Court expressly rejected a plaintiff's claim that publication of the fact of his arrest (*on a charge to which the plaintiff pleaded not guilty and which was not subsequently pursued by the state*) raised a constitutional claim under either the First, Fourth, Fifth, Ninth or Fourteenth Amendments.  ***Paul***, 424 U.S. at 712-13.  The Sixth Circuit has recognized and enforced this rule.  ***Bailey v. City of Port Huron***, 507 F.3d 364, 367-8 (6th Cir. 2007) (*release of information regarding the arrest of the plaintiff on drunk driving charges does not state a claim*).

The further allegation of paragraph 24 that Spaniola in this context conspired and "*with malice gave the newspapers false information*" is conclusory and fails the fundamental requirement that "a complaint must contain sufficient *factual* matter, accepted as true, to state a claim to relief that is plausible on its face."  ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009).  "[M]ere conclusory statements do not suffice. " ***Id***.  The allegations of the proposed Amended Complaint fail to identify what was "false" about anything Defendant Spaniola communicated to the news media.  The news reports attached to the proposed Amended Complaint as "Exhibit 3" indicate only that Spaniola told the media (1) that "the investigation conducted by the Michigan State Police *alleges* that Garber sold City of Manistee property . . . and did

not turn over the proceeds of the sales to the City Treasurer" and (2) that "Spaniola authorized the charge on Monday."   Both statements are absolutely true.   The possibility that the wrongdoing "alleged" by the *Michigan State Police* investigation might not subsequently be proven true in a criminal trial does not change a reporting of the charges to the news media into a "false" statement.[1]   Any malicious motive is irrelevant to the question of Spaniola's immunity.   *Ireland*, 113 F.3d at 1447.

Paragraphs 26, 27 and 28 of the proposed Amended Complaint **(ECF No. 35, Pg ID 268-9)** simply reiterate the allegations of paragraphs 26 through 28 of Plaintiff Garber's original Complaint that Defendant Spaniola threatened to upgrade the charges against Plaintiff Garber from misdemeanor to felony, while seeking to pressure Garber to accept a plea deal - - and that Spaniola then followed through upon the alleged threat.   Plaintiff Garber labels this "administrative" and "investigative" **(ECF No. 35, Pg ID 276, ¶ 58)**, but it is nothing of the sort.   The Sixth Circuit recognizes that "[c]onduct associated with plea bargains has long been held by this Court to be intimately associated with the prosecutor's role as an advocate of the state in the judicial process as to warrant absolute immunity.   *Cady*

---

[1] The alternative to press releases would be to keep all charges and criminal proceedings secret, unless and until the person charged was actually convicted.  This would defy the cherished American principal of public criminal proceedings and invoke instead the abuses of the secret proceedings of English Court of Star Chamber that the American legal system has rejected.  *In re Oliver*, 333 U.S. 257, 268-9 (1948).

*v. Arenac County*, 574 F.3d 334, 341 (6ᵗʰ Cir. 2009).  Nothing in these paragraphs defeats Defendant Spaniola's immunity.

The allegation of paragraph 29 that "*local news media, once again reported that plaintiff was to be arrested on new felony charges*" says nothing directly about Defendant Spaniola being involved in any further contact with or release of information to the media.  And, again, any press release regarding this accurate, public information does not violate the Constitution.  ***Paul***, *supra*, ***Bailey***, *supra*.

Whatever the unspecified involvement of Defendant Spaniola in the preliminary examination proceedings identified by Plaintiff Garber in paragraphs 30 and 31 of the proposed Amended Complaint **(ECF No. 35, Pg ID 269)**, such conduct unquestionably falls within the scope of Defendant Spaniola's absolute immunity. A prosecutor's actions to initiate and pursue a criminal prosecution, including "the presentation of . . . materials to a judicial officer, fall[s] squarely within the aegis of absolute prosecutorial immunity."  ***Ireland***, 113 F.3d at 1446.

Plaintiff Garber reiterates in Count IV the allegation of illegal and malicious intent by the "Defendants collectively."  Again, however, allegations of improper and malicious motives do not undermine a prosecutor's immunity.  ***Ireland***, 113 F.3d at 1447.  Plaintiff Garber's repeated attempt to label the actions by Spaniola as "administrative" and "investigative" **(ECF No. 35, Pg ID 277-8, ¶ 62)** remains conclusory and unsupported by the identification of any actually administrative or

investigative action by Spaniola anywhere in the Complaint.  This applies as well to the allegations in ¶¶ 68-9 and 77 **(ECF No. 35, Pg ID 279-80, 282-3)** and the allegations in ¶¶ 80-2 **(ECF No. 35, Pg ID 284)**, which identify no additional actions by Spaniola.

Finally, the reiteration of the allegation that "*Defendant Spaniola sent an email to Detective Miller of the Michigan State Police advising him to destroy all the evidence as Spaniola would not be seeking appea*l" is fatally vague.  It begs the question of *what* evidence is being referenced.   Even assuming, however, that Plaintiff Garber means to imply destruction of evidence that would have shown the prosecution of Garber to have been unfounded, the Sixth Circuit has held that a prosecutor's suppression of exculpatory evidence is protected by the prosecutor's absolute immunity.  ***Koubriti***, 593 F.3d at 470.

All of the alleged unlawful acts by Defendant Spaniola - - in Garber's proposed "First Amended Complaint" just as much as it is in Garber's original Complaint - - fall within the scope of Spaniola's activities as a prosecuting attorney. As a consequence, Plaintiff Garber's proposed amendments remain "futile" either for the purpose of stating a claim against Defendant Spaniola or for avoiding Defendant Spaniola's immunity.  There is no basis for this litigation to continue by indulging the amendments proposed by Plaintiff Garber.

**B.    Defendant Spaniola has "absolute immunity" against Plaintiff Garber's state-law claims as pleaded by Plaintiff Garber's proposed "First Amended Complaint."**

When confronted by a claim asserted against an individual government official under Michigan law, the first step is always to determine whether the individual official is entitled to "absolute immunity" under M.C.L. 691.1407(5). ***Odom v. Wayne County***, 482 Mich. 459, 479, 760 N.W.2d 217, 228 (2008). Defendant Spaniola has such immunity.

By mandate of M.C.L. 691.1407(5), "the elective or highest appointive executive official[s] of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her . . . executive authority." The Michigan courts have confirmed that this immunity applies to a prosecuting attorney. ***Bischoff v. Calhoun County Prosecutor***, 173 Mich. App. 802, 806, 434 N.W.2d 249, 251 (1988).

Even more broadly and apart from this statute, the Michigan Supreme Court has declared that "[a] public prosecutor is not liable for malicious prosecution." ***Matthews v. Blue Cross and Blue Shield of Michigan***, 456 Mich. 365, 379, 572 N.W.2d 603, 610 (1998). In this latter regard, the Michigan Supreme Court has acknowledged, with approval, the United States Supreme Court holdings regarding the "absolute immunity" of prosecutors. ***Id.***, at n.16. The Michigan Court of

Appeals has specifically held that the principles of federal "absolute immunity" for a prosecutor apply against state claims as well. ***Davis v. Eddie***, 130 Mich. App. 284, 287-9, 343 N.W.2d 11, 13-4 (1983). That Court has specifically recognized a prosecutor's accusatory statements to the news media are within the scope of immunity, even when the accused person is ultimately not found guilty of any crime. ***Payton v. Wayne County***, 137 Mich. App. 361, 370-1, 357 N.W.2d 700, 704 (1984).

Under these principles, Plaintiff Garber's state-law claims against Defendant Spaniola fail for the same reason as his federal-law claims fail. The substantive factual allegations underlying both Garber's federal and state claims are the same. All of the alleged unlawful acts by Defendant Spaniola - - fall within the scope of Spaniola's activities as a prosecuting attorney. Plaintiff Garber's proposed amendments remain "futile" for purposes of stating a claim against Defendant Spaniola. Plaintiff Garber's motion seeking to continue this litigation against Defendant Spaniola by amendment of Garber's Complaint should be denied.

## CONCLUSION AND RELIEF REQUESTED

The proposed amendments to Plaintiff Garber's Complaint do nothing to defeat the absolute immunity held by Defendant Paul R. Spaniola as a prosecutor. The proposed amendments are, therefore, "futile" and afford no valid basis whatsoever to prolong this litigation.

Plaintiff Garber's motion seeking to amend his Complaint should be denied. Defendant Spaniola should be dismissed from this case as argued in his pending motion seeking dismissal under Fed. R. Civ. P. 12(c).

/s/ Allan C. Vander Laan_____
Allan C. Vander Laan
Cummings, McClorey, Davis & Acho, P.L.C.
Attorneys for Deft. Spaniola
2851 Charlevoix Dr., SE, Ste. 327
Grand Rapids, MI 49546
Primary E-Mail: avanderlaan@cmda-law.com
P33893

Dated:  November 21, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to: ALL ATTORNEYS OF RECORD.

/s/ Allan C. Vander Laan_____
Cummings, McClorey, Davis & Acho, P.L.C.